IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00164-MR

| | |
|---|---|
| TOMAYO ROBERT LIONELL ALSTON, ) ) ) Plaintiff, ) ) vs. ) ) JOHN A. HERRING, et al., ) ) Defendants. ) ) | ORDER |

**THIS MATTER** is before the Court on initial review of the Complaint [Doc. 1]. Plaintiff is proceeding *in forma pauperis* [Doc. 8].

**I.  BACKGROUND**

*Pro se* incarcerated Plaintiff filed this civil rights suit pursuant to 42 U.S.C. § 1983 addressing an incident that allegedly occurred at the Lanesboro Correctional Institution.[1] He names as Defendants: John A. Herring, the Lanesboro C.I. superintendent; Micheal Brooks, a correctional sergeant and the officer-in-charge at the relevant time; and FNU Robinson and Nicole Leake, who are both correctional officers.

---

[1] Plaintiff is presently incarcerated at the Tabor Correctional Institution.

In the Complaint, the Plaintiff alleges that he was working as a night shift hallway janitor on Lanesboro's Moore Unit on March 16, 2018. Plaintiff appears to allege that Defendant Robinson was assigned to observe the corridor where Plaintiff was conducting janitorial rounds that evening and that her post was vacant. [Doc. 1 at 4, 9]. When Plaintiff arrived at the unit's slider, he alleges that Defendant Leake opened it from the control booth. Plaintiff alleges that he was then attacked by a large number of inmates armed with prison knives. Plaintiff received stab wounds to his jaw, forehead, torso, left shoulder blade, and the back and front of his right thigh, and that he was kicked in the head repeatedly after he fell to the ground. Plaintiff alleges that the attack went on for what felt to be around 10 minutes before Defendant Robinson responded to a "Code 4 (inmate disturbance)" call. [Doc. 1 at 5]. Defendant Robinson deployed mace and ordered the other inmates to get off of Plaintiff. Moments later, all available staff members including the Prison Emergency Response Team (PERT) arrived, with Defendant Brooks being the last to arrive on the scene.

Plaintiff alleges that he got up, unaware of the severity of his wounds, and waited by the slider to his housing pod which Defendant Leake did not open for him. Plaintiff began to have trouble standing and breathing. An unnamed officer approached and asked Plaintiff if he was okay. Plaintiff

2

responded affirmatively and said "just don't touch me I need some space." [Doc. 1 at 6]. Defendant Brooks told Plaintiff that he needed to submit to cuffs so he could be taken to medical. Plaintiff responded "I didn't do nothing, don't touch me; man just tried to kill me" and began limping toward the elevator with Defendant Brooks walking with him. [Doc. 1 at 6]. Plaintiff believes that Defendant Brooks tried to touch him and that Plaintiff jerked away "out of impulse…." [Id.]. Plaintiff alleges that Defendant Brooks and the PERT team then "muscled [Plaintiff] against a nearby wall" without regard for his stab wounds, placed him in full restraints, and carried him to medical. [Id.]. Plaintiff was transported to an outside hospital where he received treatment including stitches and pain medication.

Upon Plaintiff's return to Lanesboro that same night, Defendant Brooks told Plaintiff that he had been written up for failing to submit to handcuffs after the Code 4. [See Doc. 1 at 7]. Plaintiff declined to make a statement at that time because he was sleepy from medication. Plaintiff alleges that no investigative officer ever came to take his statement.

Plaintiff was then taken to segregation. He alleges that he was placed in restricted housing for administrative purposes (RHAP) for "a fight that never happened" and that he also received 20 days of "active segregation." [Doc. 1 at 8]. Plaintiff sent Mr. Lemon, a unit manager, requests to be

3

released to regular population or to be shipped to another prison, but that both requests were ignored. Plaintiff alleges that "Administration" continued to hold him in segregation without cause from March 17 to early May when he was transferred to Tabor C.I. [Id. at 9].

Plaintiff alleges that he did not sleep well in segregation and went without showering for days at a time because he feared another attack. Plaintiff alleges that inmates at Lanesboro at that time knew how to jam doors from the inside so that they could exit their cells during lockdown. Plaintiff claims that he did not feel safe, even in segregation. Plaintiff alleges that he requested mental health care and that the psychologist told that he was developing PTSD, which was normal under the circumstances.

As relief, Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, costs, and any additional relief the court deems just, proper and equitable.

## II.   STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. §

4

1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III.  DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

As a preliminary matter, Plaintiff mentions several individuals in the Complaint who are not named as Defendants. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"); see, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting

motion to dismiss for individuals who were not named as defendants in the compliant but who were served). The allegations against these individuals are nullities and will be dismissed.

Plaintiff asserts that Defendants violated the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments" and protects prisoner from the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle, 429 U.S. at 105-06); see generally Davidson v. Cannon, 474 U.S. 344, 347-48 (1986) (negligent failure to protect a prisoner from another inmate cannot support a § 1983 claim).

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinoes v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). To obtain relief on a § 1983 failure to protect claim, an inmate must

6

show that he is incarcerated under conditions posing a substantial risk of serious harm and that the prison official had a deliberately indifferent state of mind. Id. at 834.

Plaintiff appears to allege that Defendant Robinson failed to protect him from the attack by being absent from her post, that the attack occurred after Defendant Leake opened the slider, and that Defendants Robinson and Brooks did not respond quickly enough after the attack. Assuming *arguendo* that Defendants' actions and failure to act were objectively unreasonable, Plaintiff has not stated a plausible failure to protect claim because he does not allege that any Defendant subjectively disregarded a known risk of harm. He alleges, at most, negligence which is insufficient to support a § 1983 claim. Therefore, the failure to protect claims are dismissed.

The Eighth Amendment also prohibits prison officials from using excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1 (1992). In the excessive force context, the first question is whether the force was objectively sufficiently serious and the second subjective question "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Brooks v. Johnson, 924 F.3d 104, 112-13 (4th Cir. 2019); see Thompson v. Virginia, 878 F.3d 89, 99 (4th Cir. 2017) (setting forth

7

the considerations to determine whether officers acted maliciously or wantonly). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7.

Plaintiff appears to allege that Defendant Brooks used excessive force against Plaintiff. Plaintiff's allegations that he was "muscled … against a nearby wall," lifted off the ground, restrained, and carried to medical are not serious enough to implicate the Eighth Amendment. [Doc. 1 at 6]. Further, Plaintiff has failed to allege that Defendant Brooks or any other Defendant used force for the purpose of causing harm. Rather, the allegations suggest that the force was used to restore order after Plaintiff verbally and physically refused a command to cuff up immediately after a violent multi-inmate incident. Plaintiff has failed to state a plausible excessive force claim under these circumstances.

Next, Plaintiff complains that he was placed in RHAP without adequate justification during the period between the stabbing and his transfer to another prison.[2] The Fourteenth Amendment's Due Process Clause

---

[2] It appears that RHAP lasted for around three weeks. Plaintiff alleges that he was housed in segregation between the March 16 stabbing and "early May" when he was transferred to another prison. [Doc. 1 at 9]. However, that period includes 20 days of disciplinary segregation.

prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Prisoners do not have a liberty interest in any particular housing assignment unless it imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see Incumaa v. Stirling, 791 F.3d 517, 530 (4th Cir. 2015) (considerations include "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether the assignment to administrative segregation had any collateral consequences on the inmate's sentence.").

Plaintiff has failed to explain how his placement in RHAP imposed an atypical or significant hardship on him during the relatively short period between the stabbing and his transfer. Plaintiff has failed to state a plausible § 1983 claim with regards to RHAP and, therefore, it will be dismissed.

To the extent that Plaintiff complains he received 20 days of "active segregation" as a disciplinary sanction, this claim appears to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and

9

> sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. <u>A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983</u>. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 485-87 (footnotes omitted; emphasis added). In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the Heck rule to claims alleging constitutional deficiencies in prison disciplinary proceedings that have resulted in the loss of good time credits.

Plaintiff appears to allege that he received 20 days in segregation as a disciplinary sanction because the infraction was inadequately investigated. Success on the merit of such a claim would necessarily imply the invalidity of the disciplinary conviction. See, e.g., Edwards, 520 U.S. at 646-47 (plaintiff's claims that he was denied the opportunity to put on a defense and that there was deceit and bias by the hearing officer would necessarily imply the invalidity of the disciplinary proceedings). Plaintiff has not alleged that the disciplinary conviction has been reversed or otherwise invalidated.

10

Therefore, this claim appears to be barred by Heck and it is dismissed without prejudice.

Next, Plaintiff appears to allege that Defendants failed to comply with prison policy. As a general matter, "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation." Jackson v. Sampson, 536 F. App'x 356 (4th Cir. 2013).

Plaintiff appears to allege that Defendant Robison violated prison policy by being absent from her post when Plaintiff was stabbed and that the other Defendants generally failed to ensure Plaintiff's safety. Plaintiff has failed to state claims demonstrating that any of the alleged policy violations implicated his constitutional rights. His allegation that Defendants violated prison policy, by itself, fails to state a plausible § 1983 claim. Therefore, Plaintiff's claims that Defendants violated prison policy are dismissed.

To the extent that Plaintiff attempts to state supervisory claims against Defendant Herring and official capacity claims against all the Defendants, he has failed to allege facts to support such claims. See generally King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016) (describing the requirements to state a personal, supervisory, and official capacity § 1983 claims). Moreover, Plaintiff has failed to state an underlying § 1983 claim

11

upon which a supervisory claim for damages against Defendant Herring could be based.[3]  See generally Waybright v. Frederick Cnty., Md., 528 F.3d 199 (4th Cir. 2008) (supervisors "cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of official [state] officer,' at least in suits for damages.") (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); citing Grayson, 195 F.3d at 696).  Plaintiff's supervisory and official capacity claims are therefore dismissed.

Finally, it appears that Plaintiff may be attempting to state a negligence claim under state law.  The Court will decline to exercise supplemental jurisdiction at this time because no federal claim has passed initial review. See 28 U.S.C. § 1367(c)(3); Artis v. D.C., 138 S.Ct. 594, 598 (2018) (when a district court dismisses all claims independently qualifying for the exercising of federal jurisdiction, "they ordinarily dismiss as well all related state claims.").

Plaintiff has failed to state any plausible § 1983 claim and, therefore, the Complaint will be dismissed for failure to state a claim upon which relief can be granted.

---

[3] Plaintiff's requests for declaratory and injunctive relief appear to be moot because he has been transferred to another prison and the conditions of which Plaintiff complains are unlikely to recur.  See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

## IV. CONCLUSION

In sum, Plaintiff has failed to state a claim against any Defendant. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to show that Heck does not apply and to otherwise properly state a claim upon which relief can be granted. Should Plaintiff fail to timely amend his Complaint, this action will be dismissed without prejudice and without further notice to Plaintiff.

**IT IS, THEREFORE, ORDERED** that Plaintiff shall have thirty (30) days in which to amend the Complaint in accordance with the terms of this Order. If Plaintiff fails to amend the Complaint in accordance with this Order and within the time limit set by the Court, this action will be dismissed without prejudice and without further notice to Plaintiff.

The Clerk is instructed to mail Plaintiff a blank prisoner § 1983 complaint form.

**IT IS SO ORDERED.**

Signed: November 8, 2020

Martin Reidinger
Chief United States District Judge